IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HARRY P. HEADLEY, | : | CIVIL ACTION NO. **1:CV-07-1553** |
| | : | |
| Plaintiff | : | (Judge Caldwell) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| CHRISTY ULRICH, | : | |
| DAVID MILLIGAN, and | : | |
| PENNSYLVANIA BOARD OF | : | |
| PROBATION AND PAROLE, | : | |
| | : | |
| Defendants | : | |

**REPORT AND RECOMMENDATION**

**I. Background.**

The Plaintiff, Harry P. Headley, an inmate at the York County Prison ("YCP"), York, Pennsylvania, filed, *pro se*, this civil rights action pursuant to 42 U.S.C. § 1983, on August 23, 2007, in the United States District for the Middle District of Pennsylvania. (Doc. 1). Plaintiff attached a three-page Exhibit to his Complaint. (Doc. 1, Ex. A). Plaintiff filed a Motion to proceed *in forma pauperis*. (Doc. 5).

Plaintiff names as Defendants two (2) individual Pennsylvania State Parole Officers, as well as the Pennsylvania Board of Probation and Parole ("PA Board").[1] (Doc. 1, pp. 1-2). Specifically, named as Defendants are the following two Pennsylvania State Parole Officers: Christy Ulrich,

---

[1]The Pennsylvania Board, a state agency, is not subject to suit under § 1983, thus is not a proper Defendant in this case. *See Will v. Michigan Dept. of State Police,* 491 U.S. 58 (1989); *Roadcloud v. Pa. Bd. of Probation and Parole,* 2006 WL 83453, * 2 (E.D. Pa.). Since Plaintiff has named the PA Board, in its "official capacity," as a Defendant, we will recommend that this Defendant be dismissed. (Doc. 1, pp. 1-3).

Parole Supervisor; and David Milligan, Parole Officer.  (Doc. 1, pp. 1-2).[2]

As relief, Plaintiff seeks compensatory damages from Defendants for "25 million dollars total"

plus "$1500.00 a day from [Defendant ] Christy Ulrich for false imprisonment ... " as well as

damages for false incarceration.  (Doc. 1, pp. 5, 8).[3]   Plaintiff also seeks his release from prison.

(*Id.*, p. 8, ¶ B.).[4]   Plaintiff also requests that Defendant Ulrich be fired.  (Doc. 1, p. 7).  This is not

a proper request for relief and should be stricken from the Complaint.  Plaintiff indicates that he

sues Defendant Ulrich in  both her official and individual capacities, and that he only sues

Defendant Milligan in his official capacity.  (Doc. 1, p. 2).  Plaintiff's Complaint is clearly not

ambiguous as to the capacities in which he sues each Defendant.  (*Id.*).  To the extent that Plaintiff

is seeking monetary damages from Defendants Ulrich and Milligan in their official capacities, such

a claim is  barred under the Eleventh Amendment. (Doc. 1, pp. 2, 5).  *See Melo v. Hafer*, 912 F. 2d

628, 635 (3d Cir. 1990).   Since Plaintiff only sues Defendant Milligan in his official capacity and

only seeks monetary damages against him, we will recommend that this Defendant be dismissed

---

[2]Plaintiff spells Defendant Milligan's name as both "Millgan" and "Milligan.".  (Doc. 1, pp. 1-2).  We shall use the latter spelling for this Defendant since that is the spelling used in Plaintiff's Exhibit.  (Doc. 1, Ex. A, p. 1).

[3]Plaintiff's specific request for monetary damages should be stricken from his Complaint. Plaintiff's relief requests for specific amounts of monetary damages should be stricken from the Complaint.  Since Plaintiff seeks unliquidated damages, he cannot claim a specific sum of relief. Pursuant to Local Rule 8.1, M.D. Pa., Plaintiff's requests for specific monetary damages (Doc. 1, pp. 5, 6-7) should be stricken from his Complaint.  *See Stuckey v. Ross*, Civil No. 05-2354, M.D. Pa., 1-9-06 Order, J. McClure.

[4]Insofar as Plaintiff requests to be released from prison (Doc. 1, p. 8), he must file a petition for writ of habeas corpus pursuant to 28 U.S.C. §2254.  *See Nelson v. Campbell*, 124 S. Ct. 2117, 2124 (2004); *Wilkinson v. Dotson*, 125 S. Ct. 1242 (2005).

from this action since it is barred by the Eleventh Amendment and he is immune from liability.  *See Atwell v. Schweiker*, Appeal No. 06-3455, slip op. p. 3 (10-4-07), 2007 WL 2900565, * 1 (3d Cir. 2007) (Non-Precedential).

The *Atwell* Court stated:

> The Eleventh Amendment bars a suit against state officials sued in their official capacities because the state is the real party in interest inasmuch as the plaintiff seeks recovery from the state treasury.  *Melo v. Hafer*, 912 F.2d 628, 635 (3d Cir. 1990).  The Eleventh Amendment does not bar suits against state officials in their personal capacities.  *Id.*

(*Id.*, *1).

As relief, Plaintiff Headley specifically requests:

> 25 Million Dollars Total
> Total 12.5 and 12.5 <u>Total</u> "25 million" Plus $1500.00 a day from Christy Ulrich for false imprisonment.  My agreement was not valid from Parole so i (sic) could not of (sic) violated parole. Christy Ulrich to be fired and all of State Parole to be sent to a course to learn constitutional rights and no one to be permitted to go to a religious house after being released from prison.

(*Id.*, p. 5, ¶ 6.).

As stated above, Plaintiff also requests his "release from prison." (Doc. 1, p. 8, ¶ B.).  Plaintiff must file a habeas petition to the extent that seeks to be released from prison.  The Supreme Court has held that a civil rights action is a proper remedy for a prisoner who claims that his conditions of confinement violate the constitution, but is not challenging the fact or length of his custody. *Preiser v. Rodriguez*, 411 U.S. 475, 499, 93 S. Ct. 1827 (1973).  Plaintiff, in the present case, insofar as he requests his release from prison, is clearly implicating relief that would significantly alter the

term of his confinement in prison, and he has incorrectly attempted to raise this challenge (*i.e.* false incarceration) affecting the duration of his sentence as a §1983 civil rights action.  Thus, Plaintiff's claim for false incarceration and his request for release from prison (Doc. 1, p. 8) are properly construed as a petition for habeas corpus relief pursuant to 28 U.S.C. § 2254 and not as a § 1983 civil rights action.  *See Muhammad v. Close*, 124 S.Ct. 1303, 1304 (2004) (*Per Curiam*).  Therefore, to the extent that Plaintiff is challenging the duration of his confinement, and he seeks an Order directing Defendants to release him from prison  (Doc. 1,  p. 8), this is a habeas claim and should be dismissed without prejudice.

The Third Circuit in *Leamer v. Fauver*, 288 F. 3d 532, 542 (3d Cir. 2002), stated:

> whenever the challenge ultimately attacks the 'core of habeas' -- the validity of the continued conviction or the fact or length of the sentence -- a challenge, however denominated and <u>regardless of the relief sought,</u> must be brought by way of a habeas corpus petition.  Conversely, when the challenge is to a condition of confinement such that a finding in plaintiff's favor would not alter his sentence or undo his conviction, an action under § 1983 is appropriate. (Emphasis added).

Thus, Plaintiff's challenge to the duration of his confinement at YCP, and his request for relief that would result in a release from confinement, is not a claim to be raised in a civil rights action, but must be raised in a habeas corpus petition.  A ruling in the Plaintiff's favor on this claim would certainly alter his confinement, *i.e.*, cause his immediate release from incarceration.

Plaintiff's two claims are on pages 7- 8 of his Complaint.[5]  Plaintiff does not include a copy of the Pennsylvania Board's Decision with respect to his February 2006 parole hearing in which he states that he was granted parole.  Nor does Plaintiff include a copy of the June 2006 Decision of the PA Board in which his parole was revoked when he left a drug and alcohol treatment house. (*Id.*, pp. 7-8).  Plaintiff filed a Motion to proceed *in forma pauperis*.  (Doc. 5).

Plaintiff indicates that he has not completely exhausted all of his state court remedies. (Doc. 1, pp. 5, 7-8).  Plaintiff indicates that he wrote a letter to the Bureau of Protection Services concerning his present claim, namely that the drug and alcohol treatment facility in which he was placed from May 26, 2006 through June 19, 2006, was really a religious treatment center and that when he left on his own, his parole was violated and he was returned to prison.  Specifically, Plaintiff states that he "wrote a letter to Bureau of Protection Services[.] It told me in my Parole Agreement to write them if I['ve been violated." (Doc. 1, p. 5).  Plaintiff indicates that he did not appeal the [parole revocation] decision since "the parole supervisor [Defendant Ulrich] had it out for me... ." (*Id.*).  Plaintiff refers to this Exhibit A attached to his Complaint, which appears to be a copy of a 2006 three-page letter styled, in part, "Under 42 U.S.C. § 1983," he sent to the Pennsylvania Board Bureau of Protection Services. (Doc. 1, Ex. A).  On pages 7-8 of his Complaint, Plaintiff again indicates that he did not fully exhaust his state court remedies with respect to his first claim, which is a First Amendment free exercise of religion claim.  Plaintiff again states that he "wrote a letter to the complaint department of the state Parole... ." (*Id.*, p. 7).  Plaintiff also refers

---

[5]We have numbered in pencil Plaintiff's pages to his Complaint for convenience in referencing them. (Doc. 1, pp. 1 - 9).

again to his Exhibit A, 2006 letter complaint.

It is well-settled that a state inmate must exhaust his state court remedies prior to filing a §2254 petition for writ of habeas corpus in federal court. *See Blasi v. Attorney General of PA*, 30 F. Supp. 2d 481, 486 (M.D. Pa. 1998).

To the extent that Plaintiff Headley is challenging his revocation of parole by the PA Board and is seeking his release from his present confinement at YCP, he must raise this claim in a habeas petition after he exhausts his state court remedies. Plaintiff has clearly not fairly presented his instant claim to the state courts.

Further, our Plaintiff does not demonstrate that exhaustion is futile. Plaintiff simply states that after he wrote his letter to the PA Board (Doc. 1, Ex. A), the PA Board told him he was found guilty and it "gave [him] 9 months." Plaintiff then states that he did not seek to pursue any further state court remedies after the Board's response since he "didn['ji]t want [to hurt his] chances of getting out after that because of making someone angry or complaining, they would not help me on the street. Why would I believe they would make anything on me easy." (Doc. 1, p. 8). Therefore, since exhaustion has admittedly not been completed, and since it would not have been futile to do so, we shall recommend that Plaintiff's Complaint seeking to challenge his parole revocation and requesting release form confinement at YCP be dismissed for failure to exhaust state court remedies. *See Blasi, supra.*[6]

## II.  PLRA.

Notwithstanding Plaintiff's admitted failure to exhaust his state court remedies with respect

---

[6]*See also Vasquez v. Hillery*, 474 U.S. 254, 257 (1986).

to his challenge to his parole revocation, we will screen his Complaint.  As stated, Plaintiff filed a

Motion to proceed *in forma pauperis*.  (Doc. 5).  The Prison Litigation Reform Act of 1995,[7] (the

"Act"), obligates the Court to engage in a screening process when a prisoner wishes to proceed *in

forma pauperis* pursuant to 28 U.S.C. § 1915.[8]  Specifically, Section 1915(e)(2), which was created

by § 805(a)(5) of the Act, provides:

> (2) Notwithstanding any filing fee, or any
> portion thereof, that may have been paid, the
> court shall dismiss the case at any time if the
> court determines that (A) the allegation of
> poverty is untrue; or (B) the action or appeal
> (i) is frivolous or malicious; (ii) fails to
> state a claim on which relief may be granted;
> or (iii) seeks monetary relief against a
> defendant who is immune from such relief.

As stated, Plaintiff basically challenges his placement into a drug and alcohol treatment

house as a condition for his release on parole by the PA Board, which he claims was really a

"religious treatment center." (Doc. 1, p. 7).  Plaintiff states that if he did not sign the house

agreement (or contract), he would have to go back to prison.  Plaintiff was released to the drug and

alcohol program on May 26, 2006, and he stayed there 24 days until June 19, 2006, at which time

he left the program on his own.  Plaintiff's parole was then violated due to his failure to abide by

the treatment house agreement.  (*Id.*, pp. 7-8).  Plaintiff states that he requested many times to be

---

[7]Pub. L. No. 104-134, 110 Stat. 1321 (April 26, 1996).

[8]The Plaintiff completed an application to proceed *in forma pauperis* and authorization
to have funds deducted from his prison account.  The court then issued an administrative order
directing the warden to commence deduction of the full filing fee due the court from the
Plaintiff's prison trust fund account.  (Docs. 5 & 6).

removed from the treatment house since he claimed it was a religious house and that it forced

religious beliefs and practices upon him.  Plaintiff claims that he was forced to "pray, etc." (Doc.

1, p. 7), in violation of his First Amendment right to religious freedom.  Plaintiff also claims that if

he did not stay in the "religious house" and practice its forced beliefs, he would be in violation of

his parole and forced to back to prison. (Doc. 1, p. 7).  Thus, Plaintiff claims that he was not able

to participate in the drug and alcohol treatment program since it was really a "religious treatment

center." Plaintiff states that he therefore left the program, and that he was found to be in violation

of his parole and returned to prison.[9]  Plaintiff challenges his revocation of parole due to his

departure from the drug and alcohol treatment house, and he seeks, in part, to be released from

confinement at YCP.

       As discussed above, Plaintiff's challenge to his parole revocation, his claim that he has been

falsely incarcerated since September 2006, and his request for release from prison ( Doc. 1, Ex. A,

---

       [9]Plaintiff has no right to parole under Pennsylvania law.  As the Court stated in *Ledwith v. Brooks*, 2007 WL 804189, * 5 (W.D. Pa.), an inmate "does not have a constitutionally-protected liberty interest in release on parole that arises under state law."  Thus,  Plaintiff has not implicated any liberty interest with respect to his continued incarceration at YCP for violating his parole after he left the treatment  program  (*i.e.* since September 5, 2006 to the present).  (*See* Doc. 1, Ex. A, p. 2, second to last ¶).
       Moreover, Plaintiff claims that  being forced to attend the religious program violated his Fourteenth Amendment equal protection rights and that it amounted to failure to protect his life and liberty under the Eighth Amendment, seemingly since if he did not attend the religious treatment program, he was forced to return to prison.  (Doc. 1, p. 8).  We shall address below Plaintiff's Fourteenth Amendment Equal Protection claim.  Plaintiff's Eighth Amendment failure to protect claim regarding his contention that was forced to practice religion and that he was made to go back to prison for leaving the drug and alcohol treatment program clearly fails to state a cognizable Constitutional claim.  Further, we find no Constitutional claim is stated by Plaintiff with respect to his initial placement in a drug and alcohol treatment program as a condition for parole since Plaintiff had no right to parole.

p. 2, second to last ¶ and Doc. 1, p. 8) must be filed as a habeas petition.

In reviewing the Complaint under 28 U.S.C. §1915(e)(2)(B), we find that this case should be dismissed insofar as Plaintiff is challenging his parole revocation, since this is a habeas claim, and Plaintiff has admitted his failure to exhaust his state court remedies. We find that Plaintiff cannot seek monetary damages from Defendant Milligan and Defendant Ulrich in their official capacities, and since this is the only basis for liability claimed against Defendant Milligan, this Defendant should be dismissed. *See Atwell, supra.* As mentioned, Plaintiff only sues Defendant Milligan in his official capacity and only seeks monetary damages this Defendant. Plaintiff sues Defendant Ulrich in both her individual and official capacities. (Doc. 1, pp. 2, 5).[10] To the extent that Plaintiff sues Defendant Ulrich in her personal capacity and seeks monetary damages from her, this claim should be dismissed for failure to state her personal involvement in any violation of Plaintiff's constitutional rights.[11] Further, we find that Defendant PA Board should be dismissed since it not a person for purposes of §1983 liability.

We also find that the Plaintiff is not able to maintain his action with respect to his First Amendment free exercise of religion claim.

---

[10]Plaintiff incorrectly sues Defendants Ulrich, in part, and Milligan for monetary damages in their official capacities. (Doc. 1, p. 2). Plaintiff's claim as against both of these Defendants for monetary damages in their official capacities should be dismissed. *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989); *See Meekins v. Beard*, 2007 WL 675358, *3 (M.D. Pa.). Also, as stated above, since Plaintiff only sues Defendant Milligan for monetary damages in his official capacity, this Defendant should be dismissed entirely from this action.

[11]The Eleventh Amendment does not bar Plaintiff's action against Defendant Ulrich in her personal capacity.

### III. Motion to Dismiss Standard.

In considering whether a pleading states an actionable claim, the court must accept all material allegations of the complaint as true and construe all inferences in the light most favorable to the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). A complaint should not be dismissed for failure to state a claim unless it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 44-46 (1957); *Ransom v. Marrazzo*, 848 F.2d 398, 401 (3d Cir. 1988). A complaint that sets out facts which affirmatively demonstrate that the plaintiff has no right to recover is properly dismissed without leave to amend. *Estelle v. Gamble*, 429 U.S. 97, 107-108 (1976).

### IV. Section 1983 Standard.

In a § 1983 civil rights action, the Plaintiff must prove the following two essential elements: (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct complained of deprived the Plaintiff of rights, privileges or immunities secured by the law or the Constitution of the United States. *Parratt v. Taylor*, 451 U.S. 527 (1981); *Kost v. Kozakiewcz*, 1 F. 3d 176, 184 (3d Cir. 1993).[12]

Named as Defendants are two (2) PA Board members and the PA Board. Since Defendants that are individually named in Plaintiff's Complaint have been stated above, we shall not reiterate their names.[13]

---

[12]Section 1983 is not a source of substantive rights. Rather, it is a means to redress violations of federal law by state actors. *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002).

[13]Since both of the individual Defendants are employees of the state (*i.e.*, Pennsylvania State Parole Officers), they are state actors for purposes of § 1983.

It is well established that personal liability under section 1983 cannot be imposed upon a state official based on a theory of *respondeat superior.  See, e.g., Rizzo v. Goode*, 423 U.S. 362 (1976); *Hampton v. Holmesburg Prison Officials*, 1546 F.2d 1077, 1082 (3d Cir. 1976); *Parratt, supra*.  It is well settled in the Third Circuit that personal involvement of defendants in alleged constitutional deprivations is a requirement in a § 1983 case and that a complaint must allege such personal involvement.  *Id.*  Each named defendant must be shown, through the complaint's allegations, to have been personally involved in the events or occurrences upon which Plaintiff's claims are based.  *Id.*  As the Court stated in *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998):

> A defendant in a civil rights action must have personal involvement in the alleged wrongs . . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence.  Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity. (Citations omitted).

A civil rights complaint must state time, place, and responsible persons.  *Id.*  Courts have also held that an allegation seeking to impose liability on a defendant based on supervisory status, without more, will not subject the official to section 1983 liability. *See Rode,* 845 F.2d at 1208; *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir.1985) (per curiam) (a mere "linkage in the prison chain of command" is not sufficient to demonstrate personal involvement for purposes of section 1983).

In reviewing the complaint under 28 U.S.C.§1915(e)(2)(B), we initially find that Plaintiff's challenge to his parole revocation and his request for release from confinement should be dismissed without prejudice to file a habeas corpus petition after he exhausts his state court remedies.  Further, we find that the Plaintiff cannot name the Pennsylvania Board as a Defendant.  We find

that Defendants Milligan and Ulrich are immune from liability in this case insofar as Plaintiff sues them for monetary damages in their official capacities.  *See Atwell, supra.*

We also find that, to the extent that Plaintiff raises a Fourteenth Amendment procedural due process claim regarding his revocation of parole as against all Defendants, this claim should be dismissed since Plaintiff has not implicated a property or liberty interest with respect to being granted parole.  Thus, we find that Plaintiff's civil rights action, based on the face of his pleading, fails to state a Fourteenth Amendment procedural due process claim.  We find that Plaintiff has failed to state an equal protection claim as well.  As stated, we also find that Plaintiff cannot seek monetary damages against Defendants Milligan and Ulrich, state officials, in their official capacities. *See Atwell, supra.*   Further, we find that there is insufficient personal involvement alleged as to the two (2) individual Defendants with respect to their roles in the decisions to revoke Plaintiff's parole for leaving the drug and alcohol treatment program.  Finally, we find that Plaintiff has failed to state a First Amendment free exercise claim against Defendants Milligan and Ulrich.

## V.  Allegations of Complaint.

Plaintiff's first claim is that after he was granted parole by the PA Board in February 2006, he was ordered to a drug and alcohol treatment house.  Plaintiff avers that the treatment house was really a "religious treatment center."  Plaintiff states that if he did not sign the house agreement, he would have to go back to prison.  Plaintiff avers that he was released from prison into the treatment program on May 26, 2006, and that he remained there until June 19, 2006.  (Doc. 1, p. 7).  Plaintiff avers that he "asked many times too (sic) be removed out of this religious house, because of forced beliefs, forced practices." (*Id*.).  Plaintiff states that he was forced to stay at the religious treatment

house and forced to pray for 24 days or face being returned to prison.  (*Id*.).  Plaintiff states that this violated his First Amendment right to free exercise of religion.  As relief, Plaintiff seeks $12.5 million and for Defendant Ulrich to be fired.  (*Id*.).

As his second claim, Plaintiff states that on June 19, 2006, Defendant Ulrich told him he could not transfer to another program after he told her and Defendant Milligan, many times, that he "was being forced to practice religion and that there was drug use in this house, nothing was done." (Doc. 1, p. 8).  Plaintiff states that he therefore left the program on his own and his parole was then revoked for violating his house agreement.  Plaintiff states that the house agreement was invalid since he was forced to go to a religious program, which was in violation of his First Amendment rights.  Plaintiff claims that Defendants' conduct violated his equal protection rights and that it amounted to a failure to protect his life and liberty with respect to choosing his own religious beliefs.

As relief for his second claim, Plaintiff seeks $12.5 million for false incarceration, and he requests his release from prison.  Plaintiff also seeks $1500.00 per day from Defendant Ulrich for every day he was in prison "for her not protecting me and violating my rights... ." (Doc. 1, p. 8).[14]

Plaintiff seems to claim that his agreement to complete the drug and alcohol treatment program and to reside in the "treatment house" was required for him to be released on parole.

_____

[14]Plaintiff does not specify that Defendants Ulrich and Milligan were specifically involved with decision  to revoke his parole and send him back to prison.  Nor does Plaintiff state that these Defendants required him to reside in the drug and alcohol treatment house as a condition for his parole.  Further, Plaintiff does not allege that Defendants Ulrich and Milligan forced him to practice religious beliefs while he resided in the treatment house.

Plaintiff claims that he signed the agreement and was released from prison to the house in May 2006, and that he stayed there for 24 days until he left, on his own, on June 19, 2006, due to the religious nature of the program.  Plaintiff avers that he asked Defendants to remove him from the treatment house, and transfer him to another program because he was forced to practice religious beliefs, but he avers that Defendants did not do anything. (Doc. 1, p. 8).

Plaintiff further claims that Defendants required him to stay in the program at the house or they would force him to go back to prison.  Plaintiff claims that Defendants unconstitutionally revoked  his parole for not staying at the drug treatment house.  Plaintiff states in his 2006 letter to the PA Board, Ex. A, p. 2,  that he was falsely incarcerated from September 5, 2006 to the present.[15]  Plaintiff avers that Defendants have violated his rights since his parole was revoked for leaving the drug treatment house in June 2006.

In Plaintiff's nine-page Complaint, we do not find any specific claims against the individual Parole Officer Defendants regarding their involvement with Plaintiff's February 2006 parole hearing and the order that he reside in a drug and alcohol treatment house.  (Doc. 1, p. 7).  Plaintiff's claims

---

[15]As Plaintiff's parole was revoked by the PA Board, and he claims he has been falsely incarcerated since September 2006, Plaintiff must first successfully challenge his parole revocation in question, which caused his return to prison, *via* a § 2254 habeas petition.  Thus, a § 1983 claim against Defendants may be barred by *Heck,* which precludes a §1983 claim challenging a Plaintiff's conviction.  As the Third Circuit  stated, "[under *Heck*, a § 1983 action that impugns the validity of the Plaintiff's underlying conviction cannot be maintained unless the conviction has been reversed on direct appeal or impaired by collateral proceedings."  *Gilles v. Davis*, C.A. No. 04-2542, (3d Cir. 10-25-05), slip op. 21.; 427 F.3d 197, 208-209 (3d Cir. 2005).

Moreover, as Plaintiff's parole was revoked and he was returned to York County Prison, his false incarceration claim should be raised in his habeas petition after he exhausts his state court remedies.

against the Defendant Parole Officers are that they repeatedly refused to let him leave the drug treatment house and transfer him to another program, despite his requests to be removed from it. Plaintiff avers that he was forced to accept religious beliefs and practices at the treatment house, and that Defendants denied his requests to leave. Plaintiff states that, if he left the house, he would be sent back to prison. Plaintiff claims that the Defendants' actions violated his First Amendment free exercise of religion right and the Fourteenth Amendment Equal Protection Clause. Plaintiff is deemed as claiming that the Defendants violated his Constitutional since his parole was revoked based on his leaving the drug house treatment program since he claimed the program was a religious-based program.

Plaintiff states that he filed a grievance through the PA Board, but he did not pursue his available state court remedies regarding his claim that his parole revocation violated his Constitutional rights since he was forced to practice religion at the drug treatment house.

## VI. Discussion.

### A. Failure to Exhaust

As mentioned, Plaintiff states that he did not exhaust his grievance and his remedies available with respect to his claim that he was forced to practice religion in the residential treatment program. As this Court held in *Boykin v. Siena House Gaudenzia Program*, 464 F. Supp. 2d 416, 420-421 (M. D. Pa. 2006), since the Siena House had an established policy for grievances and Plaintiff did not file any grievance about his religious concerns, his failure to exhaust was fatal to his First Amendment free exercise of religion claims. In our case, Plaintiff indicates that there was an established procedure to grieve his claim about his free exercise of religion claim concerning the

drug treatment house with the PA Board.  Plaintiff states that he sent the Board a letter, and he attaches a copy of the letter as Ex. A to his Complaint.  Plaintiff indicates that he did not further pursue his grievance, and his excuse for not doing so, *i.e.* he feared it would hurt his chances of getting out of prison because it might make someone angry, has no merit.  (Doc. 1, p. 8). Moreover, Plaintiff had state court remedies available that he did not pursue.

Since Plaintiff has admitted his failure to exhaust  on the face of his pleading, we will recommend that his action be dismissed.

### B. Fourteenth Amendment Equal Protection Claim

Plaintiff vaguely alleges that Defendants, by improperly making him stay in the program and drug treatment house under threat of revoking his parole, violated his right to equal protection. (Doc. 1, p. 8).  Plaintiff does not assert that his Fourteenth Amendment right to equal protection was violated by Defendants since he was being treated differently than other similar inmates.

We find that the § 1983 Equal Protection claim against Defendants should not proceed because the Plaintiff has not alleged that Defendants purposely discriminated against him on the basis of his race, gender, or nationality.  Plaintiff does not claim that Defendants were motivated by a discriminatory intent with respect to Plaintiff's allegations.  Additionally, we  find that Plaintiff has not properly stated that he and other inmates were similarly situated for purposes of an equal protection claim.

In the case of *Jefferson v. Wolfe*, 2006 WL 1947721, * 15 (W.D. Pa.), the Court stated:

> "as a threshold matter, in order to establish an equal protection violation, the plaintiff must ' . . . demonstrate that [he has] been treated differently by a state actor than others who are similarly

situated simply because [he] belongs to a particular protected class.'" *(Citing Keevan v. Smith*, 100 F.3d 644, 648 (8th Cir. 1996).

The elements of a § 1983 Equal Protection claim require Plaintiff to state Defendants intended to discriminate against him, and later to prove this by either direct or circumstantial evidence. *See Pa. v. Flaherty*, 983 F. 2d 1267 (3d Cir. 1993) (Intent is a *prima facie* element of a § 1983 equal protection claim of discrimination) (citing *Washington v. Davis*, 426 U.S. 229 (1976). *See also Williams v. Pa. State Police*, 108 F. Supp. 2d 460, 471 (E.D. Pa. 2000) ("to prevail on a § 1983 claim, a plaintiff must prove that the Defendant intended to discriminate") (citation omitted).

The Equal Protection Clause does not require that all persons be treated alike, but instead, a plaintiff must show that the differential treatment to those similarly situated was unreasonable, or involved a fundamental interest or individual discrimination. *Tigner v. Texas*, 310 U.S. 141, 147 (1940); *Price v. Cohen*, 715 F.2d 87, 91 (3d Cir. 1983), *cert. denied*, 465 U.S. 1032 (1984). It is well-settled that a litigant, in order to establish a viable equal protection claim, must show an intentional or purposeful discrimination. *Snowden v. Hughes*, 321 U.S. 1, 8 (1944); *Wilson v. Schillinger*, 761 F.2d 921, 929 (3d Cir. 1985), *cert. denied*, 475 U.S. 1096 (1986); *E & T Realty v. Strickland*, 830 F.2d 1107, 1113-14 (11th Cir. 1987), *cert. denied* 485 U.S. 961 (1988). This "state of mind" requirement applies equally to claims involving (1) discrimination on the basis of race, religion, gender, alienage or national origin, (2) the violation of fundamental rights, and (3) classifications based on social or economic factors. *See, e.g., Britton v. City of Erie*, 933 F. Supp. 1261, 1266 (W.D. Pa. 1995), *aff'd*, 100 F.3d 946 (3d Cir. 1996); *Adams v. McAllister*, 798 F. Supp. 242, 245 (M.D. Pa.), *aff'd*. 972 F.2d 1330 (3d Cir. 1992).

17

As the Court in *Barnes Foundation v. Township of Lower Merion*, 942 F.Supp. 970, 983 (E.D. Pa. 1997), stated:

> The Equal Protection Clause of the Fourteenth Amendment of the United States Constitution provides that "[n]o State shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV, § 1. The Equal Protection Clause announces the "fundamental principle" that "the State must govern impartially," *New York City Transit Auth. v. Beazer*, 440 U.S. 568, 587, 99 S.Ct. 1355, 1367, 59 L.Ed.2d 587 (1979), and "is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985).

Plaintiff has not alleged facts from which it can be concluded that our Defendants engaged in intentional or purposeful discrimination or that he was treated differently by Defendants than similarly situated persons on the basis of his race, nationality or gender.   In short, Plaintiff does not allege discrimination with respect to his claims that Defendants improperly refused to transfer him to a different program. There is no cognizable equal protection claim stated.

Plaintiff also seems to claim that Defendants violated his right to equal protection by making him complete the drug and alcohol treatment program, which he avers was really a religious-based program.

Recently, this Court in *Porter v. Grace*, 2006 WL 680820, *2 (M.D. Pa.), considered an equal protection claim in § 2254 habeas case, and stated:

> Petitioner contends that he is being forced to participate in sex offender treatment before he can participate in the parole release program and that officials refuse to acknowledge that he has completed sex offender treatment.  He argues this is being done in violation of the Fourteenth Amendment guarantees of procedural due process and equal protection. "An equal protection claim arises when an individual contends that he is receiving different treatment from that received by

other individuals similarly situated." *Kuhar v. Greensburg-Sale School Dist.*, 616 F.2d 676, 677 n. 1 (3d Cir. 1980). Inasmuch as the Petitioner has not alleged that he was treated differently than others similarly situated, his equal protection claim must fail.

Plaintiff Headley does not allege he received different treatment than other similarly situated inmates. Therefore, we shall recommend that Plaintiff's Fourteenth Amendment equal protection claims against Defendants be dismissed. *See Ledwith v. Brooks*, 2007 WL 804189, * 7 (W.D. Pa.) ("prison inmates are not a suspect class") (citations omitted).

C. *Procedural Due Process Claim*

In his Ex. A, p. 2, ¶ 3, Plaintiff implicated his due process rights under the Fifth Amendment.[16]   Plaintiff is an inmate at YCP and thus, his due process claims fall under the Fourteenth Amendment.

As this Court in *Porter v. Grace*, 2006 WL 680820, *2 (M.D. Pa.), stated with respect to a due process claim related to the denial of parole:

> With regard to the Petitioner's due process claim, there is no constitutionally created liberty interest in parole. *See, e.g. Greenholtz v. Inmates of Neb. Penal and Corr. Complex*, 442 U.S. 1, 7, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979). Pennsylvania has not created a constitutionally protected liberty interest in parole through its statutes. *Rodgers v. Parole Agent SCI-Frackville, Wech.*, 916 F.Supp. 474, 476-7 (E.D. Pa. 1996). Because the Petitioner does not have a liberty interest in parole, his due process claim must also fail.

---

[16]Plaintiff's exhibits may be used in screening his action. *Pabaon Osvaldo v. U.S.P. Lewisburg Warden*, 2006  WL 485574 *1 n. 2, 8 (M.D. Pa. 2006).    Therefore, we examine Plaintiff's Exhibit A in determining whether his claims should be maintained.

As the Court stated in *Ledwith v. Brooks*, 2007 WL 804189, * 5 (W.D. Pa.):

> The discussion above makes clear that Petitioner does not
> have a constitutionally-protected liberty interest in release
> on parole that arises under state law.  Because a Pennsylvania
> prisoner has no liberty interest in obtaining parole, he
> cannot complain of the constitutionality of procedural
> devices attendant to parole decisions.  *Burkett v. Love*,
> 89 F.3d 135, 141 (3d Cir. 1996); *Rodgers v. Parole Agent
> SCI-Frackville, Wech,* 916 F.Supp. 474, 476 (E.D. Pa. 1996).
> Accordingly, Petitioner cannot obtain habeas corpus relief
> on the basis of a violation of his procedural due process
> rights with respect to denial of his application for parole.

Therefore, we will recommend that Plaintiff's Fourteenth Amendment procedural due process claim be dismissed.

### D.  Free Exercise of Religion Claim

This Court in *Boykin* considered a similar First Amendment claim in which its Plaintiff filed a § 1983 action and alleged, in part, that he was forced by the PA Board to spend 90 days in the Siena House AA program as a parole sanction.  Plaintiff Boykin claimed that this program required him to embrace its religious content and did not permit tolerance towards his religious  practices and beliefs.   Plaintiff was expelled from Siena House and its program, and then placed back in prison.  Plaintiff Headley does not state if he was made to stay in the Siena House, but he indicates that the drug  treatment house he was made to reside in was similar to the Siena House, and that it also had a program that was religious-based and forced him to practice  its religious beliefs instead of his own.  Our Plaintiff seeks, in part, as relief, to be released from prison, and he claims that he was falsely incarcerated.   (Doc. 1, p. 8).

The *Boykin* Court stated:

> The United States Supreme Court ruled that a constitutional cause of action for damages does not accrue "for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid," until the plaintiff proves that the "conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). "Because an action attacking the validity of parole proceedings calls into question the fact and duration of confinement, it must satisfy the *Heck* element." *McGrew v. Texas Board of Pardons & Paroles*, 47 F.3d 158, 161 (5th Cir. 1995). *See also Jackson v. Vannoy*, 49 F.3d 175, 177 (5th Cir. 1995) (*Heck* applies to challenges to revocation of parole); *Benson v. New Jersey State Parole Board*, 947 F.Supp. 827, 833 (D. N.J. 1996) (Applying *Heck*, Plaintiff's § 1983 claim, premised on the denial of a timely parole hearing and the allegedly erroneous calculation of his parole eligibility date, held "not cognizable, unless Benson can prove that his sentence, or more specifically, the calculation of the duration of his sentence, has been invalidated . . .").

> A decision in this case that the Plaintiff is entitled to damages due to the Commonwealth Defendants revoking Plaintiff's parole based on the "impermissible expulsion of Plaintiff from Sienna House," would imply that the Plaintiff is being improperly incarcerated and would bring into question the validity of his parole revocation, which in turn goes to the fact or duration of his confinement.  Plaintiff cannot proceed with this § 1983 action for damages until he has established, first by resort to state court remedies, that his confinement for parole revocation was improper.  There is no indication, however, that there has been a prior adjudication pertaining to the alleged unlawful revocation of Plaintiff's parole.  Thus, it is appropriate to dismiss Plaintiff's claim for damages as legally frivolous, since he cannot, under *Heck*, maintain a cause of action for unlawful imprisonment until the basis for that imprisonment - in this case his parole revocation - is rendered invalid.  *Semkew v. Walsh, et al.*, Civil No. 94-0673 (M.D. Pa. July 27, 1994 )(McClure, J.) (dismissal of complaint as frivolous pursuant to 28 U.S.C. § 1915(d) where, based on *Heck v. Humphrey*, the plaintiff has no cause of action pursuant to § 1983).

464 F. Supp. 2d at 423-424.

The *Boykin* Court also considered its Plaintiff's claim challenging the validity of his parole revocation for alleging that the Siena House prevented him from practicing his religion and that he was removed from it due to his complaints.  The *Boykin* Court stated:

> Further, to the extent that Plaintiff seeks to challenge the underlying validity of his parole revocation, it is well-settled that prisoners cannot use § 1983 to challenge the fact or duration of their confinement or to seek immediate or speedier release. *Preiser v. Rodriguez*, 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973). [FN2].  Finally, in order to state a viable claim under 42 U.S.C. § 1983, each named defendant must be shown, via the complaint's allegations, to have been personally involved in the events or occurrences which underlie a claim.  *See Rizzo v. Goode*, 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976); *Hampton v. Holmesburg Prison Officials*, 546 F.2d 1077 (3d Cir. 1976).  Although Plaintiff alleges that the Commonwealth Defendants violated his First Amendment rights, his complaint is completely devoid of any allegations that they participated in, or limited, his ability to practice his religion while he was housed in the Siena House.  They revoked his parole based on the information from the officials at Sienna House.  Thus, Plaintiff's amended complaint fails to set forth any personal involvement by the Commonwealth Defendants and their Motion to Dismiss will be granted.  An appropriate Order will be entered.

> FN2.  Plaintiff is free, however, to pursue his claims through a properly filed state court action.  In the case of a parole violator, such as Plaintiff, he must first challenge the Board's decision by filing an administrative appeal, *see* 37 Pa.Code § 73.1(b)(1), then by an appeal to the Pennsylvania Commonwealth Court, and then by a petition to the Pennsylvania Supreme Court for allowance of appeal.  *See McMahon v. Pennsylvania Board of Probation & Parole*, 504 Pa. 240, 470 A.2d 1337 (1983); *Evans v. Pennsylvania Dep't of Corr.*, 713 A.2d 741 (Pa.Commw. 1998); *St. Clair v. Pennsylvania Board of Probation & Parole*, 89 Pa.Cmwlth. 561, 493 A.2d 146 (1985).

*Id.* at 424-425.

As in *Boykin*, Plaintiff Headley does not claim that Defendants Ulrich and Milligan participated in or limited his ability to practice his religion or that they forced him to practice a religion that was not his. Further, our Plaintiff's parole was revoked since he states he left the program and the drug treatment house on his own on June 19, 2006. (Doc. 1, p. 8). Also, as the *Boykin* Court noted, Plaintiff Headley can challenge the PA Board's decision to revoke his parole by filing an Administrative Appeal and then an appeal to the Pennsylvania Commonwealth Court. *Id.* at 425, n. 2.

   E. *Failure to Allege Personal Involvement of Defendant Parole Officers*

With respect to the two (2) named Pennsylvania Parole officers, we find that Plaintiff does not sufficiently allege their individual personal involvement or state that any conduct attributable to each of them amounted to a violation of his First Amendment rights. In fact, we find that Plaintiff makes no specific claim against the parole officers that they personally violated his First Amendment rights or that they required him to live at the drug treatment house as a condition for his parole. Plaintiff does not specify that these Defendants were involved in the February 2006 Parole Board Decision and its order that he be placed in a drug treatment house. Plaintiff merely alleges that Defendants failed to remove him from the house after he requested to be transferred many times because he was forced to adhere to religious beliefs and practices that were not his own. Plaintiff does not state how Defendants were involved with the alleged violation of his Constitutional rights by not responding to his transfer requests and his requests to leave the drug treatment house. Plaintiff does not state that Defendants Ulrich and Milligan revoked his parole for leaving the house. Nor does Plaintiff aver that these two Defendants made him practice a religion that was not his own

or that they prevented him from practicing his own religion.

We find that the Parole Officer Defendants should be dismissed since Plaintiff fails to allege each of their personal involvement with respect to his Constitutional claims. As stated, Plaintiff fails to allege that either one of these parole officer Defendants directly participated in the decision ordering him to live in the drug treatment house as a condition for parole. These two individual Defendants are not sufficiently alleged to have participated in any violations of Plaintiff's rights. Since there is insufficient personal involvement alleged on the part of the two (2) Defendant parole officers in any Constitutional violation, they should be dismissed.

F.  *Claims against Defendants for Monetary Damages in their Official Capacities*

As stated, Plaintiff indicates that he sues parole officer Defendant Ulrich in both her individual and official capacities. Plaintiff only uses Defendant Milligan in his official capacity. (Doc. 1, p.2). To the extent that Plaintiff is seeking monetary damages from the Defendants, he cannot do so in their official capacities. (Doc. 1, p. 5).

In his pleading, Plaintiff indicates that he is suing Defendant Ulrich in her individual and official capacities, and that he is suing Milligan only in his official capacity. (*Id*. at p. 2). The Complaint, as against the Defendants in their official capacities, to the extent that it seeks monetary damages (*Id*., p. 5), should be dismissed on the grounds that such an action is barred by the Eleventh Amendment. The Eleventh Amendment applies to claims asserted in federal court under 42 U.S.C. § 1983. *Quern v. Jordan*, 440 U.S. 332, 342 (1979). It prohibits suits brought in federal court against a state or where the state or its agency is the real party in interest, and in which the relief sought has an impact directly on the state itself. *Pennhurst State Schools and Hospital v.*

*Halderman,* 465 U.S. 89 (1984); *Allegheny County Sanitary Authority v. United States Environmental Protection Agency,* 732 F.2d 1167 (3d Cir. 1984).  Based on the above, the Plaintiff's claims, to the extent they are against the Pennsylvania Parole Officer Defendants, as named in their official capacities, seeking monetary relief are barred by the Eleventh Amendment and, thus, are subject to dismissal.

As stated, to the extent that the Plaintiffs seek monetary damages, the Defendants are immune under the Eleventh Amendment in their official capacities.  *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989); *Howlett v. Rose*, 496 U.S. 356, 365 (1990).  We believe that payment of any money judgment rendered against the Defendants, who are indisputably employees working for an agency of Pennsylvania,  would have to be paid out of the Pennsylvania State Treasury.  Further, the Pennsylvania Board, which employs the Defendants, receives its funding from the state and does not enjoy any measure of autonomy.  *See Bolden v. Southeastern Pennsylvania Transp. Auth.*, 953 F. 2d 807, 818 (3d Cir. 1991).

We find that Defendants Ulrich and Milligan  are immune from this suit under the Eleventh Amendment in their official capacities to the extent that Plaintiff is requesting relief of money damages.  *Will, supra.*[17]

---

[17]As stated above, the Plaintiff seeks compensatory damages in total of $25 million from Defendants as relief in this case.  Doc. 1, p. 5.

## VII.  Recommendation.

Based on the foregoing, it is respectfully recommended that this case be dismissed for Plaintiff's admitted failure to exhaust his Administrative remedies with the PA Board and his state court remedies.   We recommend that Plaintiff's challenge to his parole revocation and request for release from confinement be dismissed without prejudice to file a habeas corpus petition.   We recommend that Plaintiff's claim for monetary damages against Defendant Milligan and Defendant Ulrich in their official capacities be dismissed.   Since this is the only basis for liability claimed against Defendant Milligan, we also recommend that this Defendant should be dismissed in his entirety. To the extent that Plaintiff sues Defendant Ulrich in her official capacity and seeks monetary damages from her, we recommend that this Defendant be dismissed due to her lack of personal involvement with the violation of Plaintiff's constitutional rights.   Further, we recommend that Defendant PA Board should be dismissed since it not a person for purposes of §1983.   Additionally, we recommend that Plaintiff's Fourteenth Amendment claims be dismissed.   We recommend that Plaintiff's Complaint, with respect to his First Amendment free exercise of religion claim, be dismissed for failure to state the specific personal involvement of Defendants Ulrich and Milligan.[18]

---

[18]Notwithstanding Headley's *pro se* status, we do not recommend that he be permitted to amend his Complaint regarding his claims, since we find that, based on well-settled case law, he fails to state any cognizable §1983 claims.  Thus, we find futility of any amendment of Plaintiff's claims, and we shall not recommend Plaintiff be granted leave to amend his action with respect to his claims.  *See Forman v. Davis*, 371 U.S. 178, 182 (1982); *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000) (The futility exception means that a complaint, as amended, would fail to state a claim upon which relief can be granted); *Alston v. Parker*, 363 F. 3d 229, 236 (3d Cir. 2004).

Finally, it is recommended that Plaintiff's motion to proceed *in forma pauperis* (Doc. 5) be granted solely for purposes of filing this action.

**s/ Thomas M. Blewitt**
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated: October 25, 2007**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HARRY P. HEADLEY, | : | CIVIL ACTION NO. **1:CV-07-1553** |
| | : | |
| Plaintiff | : | (Judge Caldwell) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| CHRISTY ULRICH, | : | |
| DAVID MILLIGAN, and | : | |
| PENNSYLVANIA BOARD OF | : | |
| PROBATION AND PAROLE, | : | |
| | : | |
| Defendants | : | |

## NOTICE

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing

**Report and Recommendation** dated **October 25, 2007.**

Any party may obtain a review of the Report and Recommendation pursuant to

Rule 72.3, which provides:

Any party may object to a magistrate judge's proposed findings,
recommendations or report addressing a motion or matter described in
28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the
disposition of a prisoner case or a habeas corpus petition within ten (10)
days after being served with a copy thereof.  Such party shall file
with the clerk of court, and serve on the magistrate judge and all
parties, written objections which shall specifically identify the
portions of the proposed findings, recommendations or report to which
objection is made and the basis for such objections.  The briefing
requirements set forth in Local Rule 72.2 shall apply.  A judge shall
make a *de novo* determination of those portions of the report or
specified proposed findings or recommendations to which objection
is made and may accept, reject, or modify, in whole or in part, the findings
or recommendations made by the magistrate judge.  The judge, however,
need conduct a new hearing only in his or her discretion or where
required by law, and may consider the record developed before the

28

magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.


                                                 **s/ Thomas M. Blewitt**
_____      **THOMAS M. BLEWITT**
                                                **United States Magistrate Judge**


**Dated: October 25, 2007**